UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**EDWARD HENRY JOSEPHSON**, and
**ALISSA R JOSEPHSON**,

Debtors.

Case No. **04-60004-13**

### *MEMORANDUM of DECISION*

At Butte in said District this 9th day of January, 2008.

In this Chapter 13 bankruptcy, after due notice, a hearing was held January 8, 2008, in Butte on: (1) a Motion for Approval of Addendum to First Post-Confirmation Amended Chapter 13 Plan filed November 21, 2007; and (2) an Order to Show Cause entered December 20, 2007. In addition to the above matters, a "Response to Motion for Order to Show Cause, Withdrawal of Motion to Amend, and Motion to Withdraw as Counsel" was filed by R. Clifton Caughron on January 7, 2008. The aforementioned pleading, although not noticed for hearing, relates directly to the two matters set for hearing. The Chapter 13 Trustee, Robert G. Drummond, of Great Falls, Montana appeared at the hearing as did Debtors' counsel of record, R. Clifton Caughron ("Caughron"), of Helena, Montana. Debtor Alissa R. Josephson ("Alissa") testified and the Trustee's Exhibit 1 was admitted into evidence without objection. In addition to the testimony and Exhibit, the Court takes judicial notice of Caughron's 11 U.S.C. § 329(a) and Rule 2016(b), F.R.B.P., Disclosure of Compensation of Attorney for Debtor ("Caughron's Disclosure of

1

Compensation") filed January 5, 2004, and all Debtors' Chapter 13 Plans and Addendums filed in this case.

Pursuant to 28 U.S.C. § 1334(a), this Court has exclusive jurisdiction over this Chapter 13 case. The pending matters are core proceedings under 28 U.S.C. § 157(b)(2). This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

BACKGROUND

Debtors commenced this Chapter 13 bankruptcy on January 5, 2004, and were married at that time. Caughron's Disclosure of Compensation was signed by Caughron of "Caughron Debt Relief Law" on January 5, 2004, and reflects that Caughron would be paid $150.00 for his time while associate attorney fees would be billed at $120.00 per hour and paralegal fees would be billed at $75.00 per hour. Caughron's Disclosure of Compensation further recites that "Debtor[s] ha[ve] agreed to pay fees of $1,750.00 as an administrative expense of the Chapter 13 case". Consistent with Caughron's Disclosure of Compensation, Debtors' Chapter 13 Plan filed January 5, 2004, provided under paragraph 2(a) that the Trustee would pay "Debtors' attorney fees of $1,750.00, plus costs and additional fees in such amounts as may be allowed by the Court".[1] Debtors' above-mentioned Chapter 13 Plan was confirmed by Order entered June 4, 2004. Debtors' confirmed Chapter 13 Plan was a sixty month plan that provided for plan payments totaling $28,785.00.

On May 4, 2005, attorney Stephen R. McCue ("McCue"), who had absolutely no

---

[1] The Court would note that this Court generally does not require an application for approval of fees or an order authoring fees that do not exceed $1,750.00 as fees of $1,750.00 or less are subject to a rebuttable presumption that such fees are reasonable and necessary under Mont. LBR 2016-1(b).

involvement in this case, filed a Motion to Withdraw as Counsel of Record seeking authorization to allow Debt Relief Law to withdraw from this case. That motion was granted by Order entered May 5, 2005. Subsequently, McCue filed on June 29, 2005, an Application for Professional Fees and Costs, seeking an award of fees and costs in the total amount of $5,433.45.[2] The Court entered an Order on July 15, 2005, awarding Debt Relief Law fees and costs of $5,245.91.[3]

Alissa testified that she had no knowledge of Debt Relief Law's withdrawal from the case in May of 2005 or the Application for Professional Fees and Costs filed by McCue on June 29, 2005.[4] Unaware that Debt Relief Law had withdrawn from the case, Alissa telephoned Debt Relief Law in June of 2006 to inform Caughron that the marriage of Debtors Edward Josephson and Alissa had been dissolved. Caughron advised Alissa at that time that Debtors should file amended Schedules to reflect their changed circumstances. As a result of Debtors' changed circumstances, Caughron also advised Alissa that Debtors should modify their plan to reduce the length of the plan and, therefore, the total funding under the plan. Caughron failed to explain at the hearing why it took over a year to modify Debtors' Plan, but he eventually filed a Notice of

---

[2] The Court presumes that McCue filed the Motion to Withdraw and the Application for Professional Fees and Costs because Caughron was suspended from the practice of law in May and June of 2005.

[3] In hindsight and even though no objections to the fees were filed by any person, the Court questions why Caughron's fees were so high in a case that is really quite unremarkable. Specifically, the Court notes that no adversarial actions were filed. In addition, other than amending Debtors' schedules on two occasions and filing a motion for valuation of security that was resolved without Court involvement, Debtors' original Chapter 13 Plan was confirmed following a brief hearing held June 3, 2004.

[4] Alissa testified that she has never seen the June 2005 Application for Professional Fees and Costs, yet paragraph 15 of that Application provides that "Edward & Alissa Josephson have been given the opportunity to review this application and approve the requested amount."

Appearance and Debtors' First Post-Confirmation Amended Chapter 13 Plan ("Amended Plan") on September 28, 2007. With the consent of the Trustee, Debtors' Amended Plan was approved by Order entered October 4, 2007.

Debtors' approved Amended Plan reduced the length of Debtors' plan from 60 months to 49 months and reduced the total funding of the Plan from $28,785.00 to $20,994.76. In addition, paragraph 2(a) of Debtors' Amended Plan provided that the Trustee would pay "Debtors' attorney fees of $2,150.00 plus costs and additional fees in such amounts as may be allowed by the Court".[5]

On November 7, 2007, the Trustee sent Debtors a Notice of Default letter advising them that they were $539.76 in arrears under the terms of their "confirmed Chapter 13 Plan." Around the time that the Trustee sent Debtors the Notice of Default, Caughron, after reviewing the Trustee's interim statement of plan payments and disbursements, discovered that Debtors' approved Amended Plan was insufficiently funded to pay at least $16,745.00 to priority and unsecured creditors and pay Caughron's fees and costs of $5,645.91–consisting of the $5,245.91 approved per the Order entered July 15, 2005, plus the additional $400.00 requested in Debtors' Motion filed September 28, 2007--which were disclosed in the approved Amended Plan as only $2,150.00.

According to Caughron, he conferred with Debtor Edward Josephson sometime between November 7, 2007, and November 28, 2007, and Debtor Edward Josephson allegedly authorized

---

[5] Debtors' First Post Confirmation Motion to Amend Chapter 13 Plan filed September 28, 2007, provides in paragraph 6 that "Debtor's [sic] Plan includes an increase in attorney fees in the amount of $400.00 for post confirmation services, including this Motion and amendment of the Plan and schedules I and J as noted above. Debtors request that this increase be approved, and no further application for fees will be made in this case."

4

Caughron to file Debtors' Motion for Approval of Addendum to First Post-Confirmation Amended Chapter 13 Plan and Addendum to First Post-Confirmation Amended Chapter 13 Plan ("Addendum"). The Addendum seeks to increase the term of Debtors' plan term to 60 months and increase the total funding to $23,939.76. Interestingly, the Addendum does nothing to cure Debtors' default, as outlined in the Trustee's November 7, 2007, Notice of Default, but instead, the Addendum increases the arrearage by increasing the payments for the first 44 months of Debtors' Plan from $475.79 to $465.79. However, while not curing Debtors' default, the Addendum does increase the overall funding of Debtors' Plan to provide for the administrative expenses now disclosed by Caughron in paragraph 2(c) as $4,895.91, of which Caughron has received $4,495.91.

Caughron inserted both Debtors' signatures on the Addendum preceded by "/s/", which constitutes Debtors' electronic signatures under Mont. LBR 9011-1(b)[6]. The Trustee opposes approval of the Addendum arguing that Debtors' Addendum "omits significant provisions and the required form of Plan as required by Montana L.B.F. 19." The Trustee also asserts that "Debtors' attorney has forged Alissa Josephson's signature on the Plan." The Trustee's allegation of forgery prompted the Trustee to also file a Motion for Order to Show Cause on December 20, 2007, in which the Trustee asserts:

> 12. Both Edward Josephson and Alissa Josephson state that they did not sign the Addendum - in spite of the fact that their electronic signatures appear upon the Addendum. Both have advised the Trustee that they have discontinued Caughron's employment.

---

[6] LBR 9011-1(b) provides in pertinent part: "Electronic Signatures. Any person signing a document to be electronically filed shall use '/s/ [person's name]' when filing documents electronically. This shall constitute the signature of the person for purposes of F.R.B.P. 9011."

5

    13. The Trustee has twice contacted the alleged Debtors' attorney by e-mail asking for an explanation. The alleged Debtors' attorney has not responded to those inquiries.

    14. The Addendum is inconsistent with the initial disclosure of fees.

The Trustee went on to request that the Court enter "an order compelling R. Clifton Caughron to appear before this Court on January 8, 2008, at the same time of the hearing on confirmation of the 'Addendum,' and show cause why he should not be sanctioned in addition to having his fees disgorged in this matter for (1) electronically forging his clients' signatures on the underlying document before this court and (2) for failure to disclose the additional fees."

    In response to the Trustee's request for an order to show cause, the Court entered an Order to Show Cause on December 21, 2007, that provides in relevant part:

> **IT IS ORDERED . . . and NOTICE IS HEREBY GIVEN** [that] attorney **R. CLIFTON CAUGHRON SHALL APPEAR** before the Court on **Tuesday, January 8, 2008, at 10:00 o'clock a.m.**, or as soon thereafter as counsel can be heard, in the **2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA**, and show cause why he should not be sanctioned, including having his fees disgorged in this case for (1) electronically forging his clients' signatures on documents filed in this Court and (2) failure to disclose additional fees.

    Caughron apparently sought to avoid the show cause hearing by filing on January 7, 2008, his "Response to Motion for Order to Show Cause, Withdrawal of Motion to Amend, and Motion to Withdraw as Counsel", which pleading was filed without the consent of Debtors. In the combined pleading, Caughron asserts:

> On or about November 20, 2007, I contacted Debtor Ed Josephson and went over the [Trustee's Interim Statement of plan payments and disbursements] with him and the plan we had amended in September. At that time Debtor Ed Josephson authorized me to file an addendum to the plan increasing the plan payments from $100.00 per month to $223.00 per month for 15 months, making the plan a 60 month plan. Ed told me that he was the one who was making the

plan payments to the Trustee.

\* \* \*

This report is filed at such a late date because undersigned has been diligently trying to reach Ed Josephson by telephone, to no avail.

According to Caughron, he was not able to contact Debtor Edward Josephson after their conversation on or about November 20, 2007. In contrast, the Trustee stated at the hearing that he was able to contact Debtor Edward Josephson and in fact, had attempted to make arrangements for Debtor Edward Josephson to testify at the January 8, 2008, hearing via video. The Trustee explained, however, that Debtor Edward Josephson was not able to appear because the courtroom in the Missoula Federal Building was not available.

## DISCUSSION

As the facts in this case show, Caughron's actions have put these Debtors in a predicament. After learning of the dissolution of Debtors' marriage, Caughron advised Debtors that they should amend their Chapter 13 plan to reflect their change in circumstances. Debtors followed Caughron's advice and advised Caughron to draft and file their Amended Plan. Debtors' Amended Plan, which was approved by the Court on October 4, 2007, is sufficiently funded because Caughron discloses his fees as $2,150.00. However, Caughron's fees and costs, on the date Caughron filed the Amended Plan, were actually $5,645.91, consisting of the fees and costs of $5,245.81 awarded on July 15, 2005, and the additional $400.00 that Caughron was requesting for the post-confirmation work. Both Caughron's fees of $5,645.91 and the fees of $4,495.91 paid to Caughron prior to the date Debtors' Addendum was filed, render Debtors' Amended Plan unfeasible.

7

It appears to this Court that Caughron attempted to rectify the funding issue, without concern for Debtors' default, by filing the Addendum, admittedly without Alissa's consent or signature and presumably, without Debtor Edward Josephson's signature. This case is, sadly, similar to *In re Olson*, Case No. 03-61511, docket nos. 61 and 63, wherein this Court sanctioned Caughron under Rule 9011 because he electronically forged the signatures of his clients. As this Court explained in *Olson,* Rule 9011, F.R.B.P., is the bankruptcy equivalent of Rule 11, Fed. R. Civ. P. This Court construed Rule 9011 in *In re Morrow*, 17 Mont. B.R. 183, 189-90 (Bankr. D. Mont. 1998), where the Court noted that courts interpreting Rule 9011 rely on cases involving Rule 11, citing *Wolf v. Kupetz*, 118 B.R. 761, 767 (Bankr. C.D. Cal. 1990). Rule 9011(b) provides that by presenting a signed paper an attorney or unrepresented party is certifying that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, is specifically so identified, are reasonably based on a lack of information or belief.

Debtors are required to sign all plans submitted for filing under Mont. LBR 9011-1(a). Mont. LBR 9011-1(b) allows for the use of "/s/" for a person's signature: "Any person signing a document to be electronically filed shall use '/s/ [person's name]' when filing documents

8

electronically. This shall constitute the signature of the person for purposes of F.R.B.P. 9011."

Alissa testified, and Caughron does not dispute, that Alissa did not sign the Addendum. Indeed, Caughron contends he discussed the Addendum with Debtor Edward Josephson and never had any contact with Alissa concerning the Addendum, even though Caughron knew that the Debtors were divorced and living separately. Based upon this evidence, I find that Caughron violated Rule 9011(b)(3) by placing Debtors' electronic signatures on the Addendum.

Caughron filed the Addendum electronically under procedures for electronic case management/electronic case filing ("CM/ECF") adopted by this Court's General Order No. 2001-3-RBK (hereinafter the "General Order"). The General Order provides at page 2: "The Procedures provide a means for the signature on pleadings and papers through the mechanism of a password, in compliance with Mont. LBR 5005-1 and a secure mechanism for the creation and distribution of passwords". At pages 3-4 the General Order provides: "4. The electronic filing of a petition, pleading, motion or other paper by a Filing User who is a registered participant in the CM/ECF System shall constitute the signature of that Filing User under F.R.B.P. 9011 and Mont. LBR 5005-3(c). The user log-in and password required to submit documents to CM/ECF serve as the Filing User's signature on all electronic documents filed with the Court. *See* Mont. LBR 9011-1(b)."

Caughron is a registered Filing User of this Court's CM/ECF system and bound by the above procedures. Under Mont. LBR 9011-1(a), Debtors were required to sign the Addendum but Caughron failed to obtain the signature of either of the Debtors. Knowing that neither of the Debtors had signed the Addendum, Caughron proceeded to file the Addendum electronically, using his password and the Debtors' electronic signatures. The Court finds that Caughron

9

violated LBR 9011-1(a) and Rule 9011(b) by representing falsely that the Debtors signed the Addendum. Caughron's explanation that he thought it was not important to talk to Alissa about the Addendum because Debtor Edward Josephson was making the Plan payments is no excuse.

Furthermore, the Court's "General Order" provide at page 6:

> 13. Documents that are electronically filed and require original signatures other than that of the Filing User, including the petition, schedules and statement of financial affairs, must either be maintained in paper form by the Filing User until five (5) years after all periods for appeals expire, or be scanned electronically and preserved electronically in pdf. format and transmitted to the Clerk. On request of the court, the Filing User must provide original documents for review. The U.S. Trustee or case trustee may require the Debtors to provide to the U.S. Trustee or case trustee original signature pages for the petition, schedules and statement of financial affairs or may require a declaration by the Debtors verifying their signatures and their consent to electronic filing of the petition, schedules and statement of financial affairs.

Caughron is in violation of the above-quoted provision of the General Order, as he admits he does not have Debtors' original signatures on the Addendum, which Caughron electronically filed using his password and Debtors' electronic signatures. Rule 9011(b)(3) provides that a person certifies that to the best of his or her knowledge and belief, formed after an inquiry reasonable under the circumstances, that the allegations or factual contentions "have evidentiary support" or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. *Morrow*, 17 Mont. B.R. at 189. In light of the uncontroverted evidence that Debtors did not sign the Addendum, Caughron's filing of the Addendum using his password and Debtors' electronic signatures without their consent violated Rule 9011(b)(3).

Electronic filing is novel and *In re Wenk*, 296 B.R. 719 (Bankr. E.D.Va. 2002), is one of the first cases dealing specifically with electronic signatures, noting cases in which attorneys physically forged debtors' signatures on petitions, schedules and statements of financial affairs.

296 B.R. at 725-26, citing *In re Ludwick*, 185 B.R. 238 (Bankr. W.D. Mich. 1995) (holding that an attorney's forgery of debtor's signature on a petition and dishonest testimony warranted reimbursement of attorney fees, monetary sanctions, and suspension from practicing before the court for two years); *In re Nesom*, 76 B.R. 101 (Bankr. N.D. Tex. 1987) (holding that attorney's forgery of debtor's signature on the statement of financial affairs and schedules warranted suspension from practicing before the court for sixty days).

*Wenk* involved the electronic filing of a petition, and noted that in filing electronically, "the practitioner represents to the court that he or she has secured an originally executed petition physically signed by debtor *prior to* electronically filing the case." *Wenk*, 296 B.R. at 725. Since Mont. LBR 9011-1(a) specifically requires that a plan, like the petition, schedules and statements, "shall be signed by the debtor(s)", this Court construes the above language from *Wenk* as analogous to the electronic filing of the Addendum by Caughron with the Debtors' electronic signatures, which Caughron did knowing he did not have Debtors' originally executed Addendum.

Having found violations of Rule 9011, LBR 9011-1(a), this Court has wide latitude in imposing sanctions. "A decision to sanction an attorney is one of the most grievous duties of a judge." *In re Stevens*, 2007 WL 2127657 (Bankr. D. Mont.) (slip copy), citing *Wenk*, 296 B.R. at 728. But the integrity of the judicial process depends to a large extent on the veracity and integrity of the attorneys who practice, and absent the trust those virtues inspire, the system cannot function. *Wenk*, 296 B.R. at 727.

Exercising its discretion, this Court struggles to fashion a sanction that will impress upon Caughron the gravity of his actions and deter Caughron from any further rule violations that

might subject Caughron to suspension of his privileges to practice before this Court. Attorney suspension is contemplated by Mont. LBR 2090-4, and is within this Court's discretion as noted in *Wenk* and cases cited therein for his violation of Rule 9011. *Wenk*, 296 B.R. at 725-26. This Court concludes that suspension is not appropriate at this time. However, unless Caughron improves his performance in conforming to the Rules, sadly, suspension may follow upon proper notice and procedure.

Caughron advertises and practices bankruptcy law state-wide, holding himself out as a bankruptcy specialist. At the hearing, the Court sanctioned Caughron $500.00 for his actions and disallowed the $400.00 fee request embedded in the motion to amend filed in September of 2007. However, upon further reflection, this Court finds that an increased sanction is warranted. Caughron filed a Withdrawal of Motion to Amend on January 7, 2008, seeking to withdraw the unauthorized Addendum. Withdrawal of that document leaves Debtors with the Amended Plan, that is sufficiently funded on its face, but insufficiently funded if one considers the fees that have been paid to Caughron. Caughron has also filed a Motion to Withdraw as Counsel. Withdrawal of the Addendum coupled with Caughron's desire to withdraw from this case leaves Debtors in an untenable position.

The Court has the discretion to disallow all of Caughron's fees and costs for violating Rule 9011(b) and LBR 9011-1(a) and (b) by filing the Addendum with Debtors' forged electronic signatures, and has the discretion to order disgorgement of all fees and costs previously paid, which Caughron's Addendum shows is $4,495.91.

Caughron may argue that this Court's Order approving McCue's Application for Professional Fees and Costs entered July 15, 2005, constitutes the law of the case. The Court

would disagree with any such argument because the Order approving the fees and costs predated both the approved Amended Plan and the Trustee's request for Rule 9011 sanctions and nothing in such Order limits or restricts this Court's discretion to impose sanctions upon Caughron for violating Rule 9011(b) and LBR 9011-1(a) and (b). In fact, the law of the case should set the allowable fees at $2,150.00 as that is what Caughron put in Debtors' approved Amended Plan.

In order to restore these Debtors to the position they believed they were in on September 28, 2007, when Debtors' Amended Plan was filed, the Court finds it appropriate to impose a sanction upon Caughron that limits his fees and costs to the amount Caughron disclosed in Debtors' Amended Plan, which amount is $2,150.00. Caughron disclosed in the Addendum that he has received $4,495.91. Thus, Caughron shall disgorge $2,345.91 to the Trustee. With such disgorgement, Debtors' Amended Plan is now sufficiently funded and no need exists to proceed with approval of the Addendum, which wholly fails to cure the default referenced in the Trustee's November 7, 2007, Notice of Default. Therefore, the Court will approve Caughron's Withdrawal of Motion to Amend, as it provides no relief to Debtors. The Court will similarly grant Caughron's Motion to Withdraw as Counsel and Debtors can either work with the Trustee to formulate a further amended plan that cures the default or obtain other counsel who will draft a further amended plan that will cure the default and be sufficiently funded to pay the claims it purports to pay.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Trustee's request for sanctions filed December 20, 2007, is GRANTED and as a sanction for violating F.R.B.P. 9011(b) and Mont. LBR 9011-1(a) and (b),

13

Caughron shall have ninety (90) days from the date of this Order to disgorge the sum of $2,345.91 to the Trustee; Caughron's Withdrawal of Motion to Amend filed January 7, 2008, is APPROVED and Caughron is allowed to withdraw the Motion for Approval of Addendum to First Post-Confirmation Amended Chapter 13 Plan filed November 21, 2007, for the reason that said Addendum does not cure, in any fashion, the default it was purportedly supposed to cure; and Caughron's Motion to Withdraw as Counsel filed on January 7, 2008, is GRANTED and Caughron shall immediately be removed from this case as Debtors' counsel of record.

                BY THE COURT

                _____
                HON. RALPH B. KIRSCHER
                U.S. Bankruptcy Judge
                United States Bankruptcy Court
                District of Montana